```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
NML CAPITAL, LTD.,                                                 :
                                                                   :   08 Civ. 6978 (TPG)
                                Plaintiff,                         :   09 Civ. 1707 (TPG)
                                                                   :   09 Civ. 1708 (TPG)
                - against -                                        :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                                Defendant.                         :
                                                                   :
------------------------------------------------------------------ X
AURELIUS CAPITAL MASTER, LTD. and                                  :
ACP MASTER, LTD.,                                                  :
                                                                   :
                                                                   :   09 Civ. 8757 (TPG)
                                Plaintiffs,                        :   09 Civ. 10620 (TPG)
                                                                   :
                - against -                                        :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                                Defendant.                         :
------------------------------------------------------------------ X
AURELIUS OPPORTUNITIES FUND II, LLC                                :
and AURELIUS CAPITAL MASTER, LTD.,                                 :
                                                                   :   10 Civ. 1602 (TPG)
                                                                   :   10 Civ. 3507 (TPG)
                                Plaintiffs,                        :   10 Civ. 3970 (TPG)
                                                                   :   10 Civ. 8339 (TPG)
                - against -                                        :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                                Defendant.                         :
------------------------------------------------------------------ X  (captions continue on following pages)
```

**MEMORANDUM OF THE REPUBLIC OF ARGENTINA IN SUPPORT OF CITIBANK N.A.'S MOTION TO VACATE THE CITIBANK INJUNCTION, CLARIFY OR MODIFY THE INJUNCTION, AND FOR A STAY**

```
------------------------------------------------------------------- X
BLUE ANGEL CAPITAL I LLC,                          :
                                                   :
                                                   :
                                  Plaintiff,       :   10 Civ. 4101 (TPG)
                                                   :   10 Civ. 4782 (TPG)
              - against -                          :
                                                   :
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                                                   :
                                  Defendant.       :
                                                   :
-------------------------------------------------------------------X
OLIFANT FUND, LTD.,                                :
                                                   :
                                                   :
                                  Plaintiff,       :   10 Civ. 9587 (TPG)
                                                   :
                                                   :
              - against -                          :
                                                   :
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                                                   :
                                  Defendant.       :
                                                   :
-------------------------------------------------------------------X
PABLO ALBERTO VARELA, et al.,                      :
                                                   :
                                                   :
                                  Plaintiffs,      :   10 Civ. 5338 (TPG)
                                                   :
                                                   :
              - against -                          :
                                                   :
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                                                   :
                                  Defendant.       :
-------------------------------------------------------------------X
```

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................. 1
BACKGROUND ..................................................................................................................... 2
    Relevant FAA Provisions ................................................................................................. 2
ARGUMENT ............................................................................................................................ 3
    THE ARGENTINE LAW BONDS CANNOT BE SUBJECT TO THE *PARI PASSU* INJUNCTIONS BECAUSE THEY ARE NOT SUBJECT TO THE *PARI PASSU* CLAUSE ................................................................................................... 3
CONCLUSION ......................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooks v. Giuliani*,
84 F.3d 1454 (2d Cir. 1996) .................................................................................................... 4

*Forschner Grp., Inc. v. Arrow Trading Co., Inc.*,
124 F.3d 402 (2d Cir. 1997) ..................................................................................................... 3

*Grace v. Rosenstock*,
228 F.3d 40 (2d Cir. 2000) ....................................................................................................... 4

*U.S. v. LoRusso*,
695 F.2d 45 (2d Cir. 1982) ....................................................................................................... 4

**Rules and Statutes**

Fed. R. Civ. P. 54(b) .................................................................................................................. 4

Defendant the Republic of Argentina (the "Republic") submits this memorandum in support of Citibank N.A.'s ("Citibank") motion by order to show cause, dated September 21, 2014, to vacate the July 28, 2014 Order (the "Citibank Injunction"), clarify or modify the *pari passu* Injunctions, and for a stay (the "Motion").

## PRELIMINARY STATEMENT

This Court was correct when it observed that the domestically issued and domestically payable Argentine Law Bonds have been "treated differently . . . all along" from the Exchange Bonds subject to the *pari passu* Injunctions. The Court was accordingly also correct when it held in its June 27, 2014 Order that the Injunctions do not as a matter of law prohibit Citibank from disbursing to its customers Argentine Law Bond payments received from the Republic. The Republic joins Citibank in asking the Court to vacate the Citibank Injunction that rescinded in part the Court's June 27 Order and thereby extended for the first time the reach of the *pari passu* Injunctions beyond the Exchange Bonds for which The Bank of New York Mellon ("BNYM") serves as Trustee to the fundamentally different Argentine Law Bonds.

The Republic writes separately to further address an issue raised by Citibank in its papers that demonstrates why the Argentine Law Bonds cannot and should not be subject to the Injunctions, namely that those bonds do not constitute "External Indebtedness," *i.e.*, the only kind of Republic debt covered by the *pari passu* clause. Specifically, the Argentine Law Bonds are "Domestic Foreign Currency Indebtedness" ("DFCI"), as that term is defined in the 1994 Fiscal Agency Agreement ("FAA") governing plaintiffs' defaulted debt, which is *expressly excluded* from the scope of External Indebtedness. Payment on the Argentine Law Bonds is thus not a violation of the *pari passu* clause and cannot be barred by the Injunctions under any applicable legal or equitable principles.

## BACKGROUND

### Relevant FAA Provisions

Section 1(c) of the FAA, under which plaintiffs' defaulted debt was issued, contains the *pari passu* clause that forms the basis of the specific performance Injunctions at issue here. That provision states:

> The Securities [the debt issued under the FAA] will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated *External Indebtedness* (as defined in this Agreement).

*See* FAA ¶ 1(c) (Ex. A[1]) (emphasis added). In order to be subject to the *pari passu* clause, and the Court's Injunctions enforcing it, performing Republic debt must therefore constitute "External Indebtedness" under the FAA.

The FAA in turn defines "External Indebtedness" to mean other Republic obligations denominated "in a currency other than the lawful currency of the Republic," *e.g.*, U.S. Dollars, "provided," however, "that no Domestic Foreign Currency Indebtedness . . . shall constitute External Indebtedness." *Id.* at 16 (Ex. A). The fact that Republic securities may be denominated in U.S. Dollars is accordingly not enough to bring those obligations within the scope of the *pari passu* clause. In order to be covered by the provision, the obligations must not only be denominated in a foreign currency, such as U.S. Dollars, but also must *not* constitute DFCI.[2]

---

[1] All exhibits are attached to the Declaration of Carmine D. Boccuzzi, dated September 23, 2014.

[2] Plaintiffs themselves have conceded that DFCI does not constitute External Indebtedness under this definition. *See, e.g.*, Pls. Reconsideration Br. at 2 n.1, dated July 10, 2014.

Under the FAA, DFCI is defined to include, *inter alia*, (i) seven specific categories of locally issued Republic debt,[3] (ii) any indebtedness issued in exchange for such debt, and (iii) any debt payable by its terms, or at the option of the holder, in a foreign currency but "offered exclusively within the Republic of Argentina." *See id.* at 17 (Ex. A). Any Republic indebtedness meeting the definition of DFCI is accordingly not covered by the *pari passu* clause, under the express terms of the FAA, and so cannot be subject to the Injunctions that specifically enforce that provision. *Accord* Citibank Br. at 9-11.

## ARGUMENT

**THE ARGENTINE LAW BONDS CANNOT BE SUBJECT TO THE *PARI PASSU* INJUNCTIONS BECAUSE THEY ARE NOT SUBJECT TO THE *PARI PASSU* CLAUSE**

There is no factual or legal basis for extending the Injunctions to bar payment on the Argentine Law Bonds, because as DFCI they are excluded from the universe of "External Indebtedness" subject to the *pari passu* clause that the Injunctions enforce. *See, e.g.*, NML Injunction ¶ 2 (Ex. E) ("The Republic accordingly is permanently ORDERED to specifically perform its obligations to NML under Paragraph 1(c) of the FAA [*i.e.*, the *pari passu* clause]").[4] As the litigation concerning the *pari passu* Injunctions has always focused exclusively on the

---

[3] Those include (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesoraría a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías Hidrocarburiferas a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93. *See* FAA at 17 (Ex. A).

[4] Plaintiffs have taken the position that it is irrelevant whether the bonds constitute External Indebtedness. Pls. Opp. to Citi Reconsideration Motion at 7, dated July 2, 2014. But because injunctions may not unnecessarily bar lawful activity, the Injunctions clearly cannot reach more broadly than the *pari passu* clause and prohibit activity not even arguably covered by the provision. *See Forschner Grp., Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 406 (2d Cir. 1997) ("[T]he essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation . . . and to mould [*sic*] each decree to the necessities of the particular case." (internal citations and quotation marks omitted)).

New York-law governed Exchange Bonds for which BNYM serves as Trustee, the Court has not previously considered the issue of whether the Argentine Law Bonds constitute DFCI, and retains the ability to do so now by exercising its plenary power to correct erroneous interlocutory orders prior to the entry of judgment. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000) ("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain."). The Injunctions are of course interlocutory,[5] so there can be no dispute that the Court can now revisit the Citibank Injunction and properly exclude the Argentine Law Bonds from the scope of the *pari passu* Injunctions. *See U.S. v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("[T]he power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until the entry of final judgment and is not inconsistent with any of the Rules."); *Brooks v. Giuliani*, 84 F.3d 1454, 1467 (2d Cir. 1996) (injunctions may "'not impose unnecessary burdens on lawful activity'" (internal citations omitted)); *see also* Citibank Br. at 8-9.

As the two contexts in which the Argentine Law Bonds were issued locally in Argentina make clear, that indebtedness constitutes DFCI:

---

[5] Plaintiffs have conceded that the Injunctions are interlocutory, and in fact urged the Second Circuit to reach the same conclusion. *See* Corrected Brief of NML Capital, Ltd., Olifant Fund, Ltd., and Varela, et al, at 7, *NML Capital, Ltd. v. Republic of Argentina*, 12-105-cv(L) (2d Cir. Apr. 20, 2012) (stating that Injunctions are not final decisions because plaintiffs' "claims for principal and interest on the FAA bonds remain outstanding"). Plaintiffs have deliberately avoided even seeking to have judgments entered on their monetary claims, making it clear that there is no final judgment in the actions in which they obtained the Injunctions.

*First*, the Republic issued $2.3 billion worth of Argentine Law Bonds concurrently with its 2005 and 2010 exchange offers, but in *separate* exchange transactions from the ones involving BNYM pursuant to which the New York-law Exchange Bonds covered by the Injunctions were issued. In each case, the Republic authorized a domestic, local tranche, offered exclusively in Argentina, and an international exchange offer, covering all other jurisdictions outside of Argentina. These Argentine Law Bonds were offered solely in Argentina to prior holders of domestically issued Republic debt, including debt that is expressly listed in the FAA as falling under the definition of DFCI. *Compare* FAA at 17 (listing Consolidated Bonds as DFCI in (i)(b)-(c)) (Ex. A) *with* Prospectus Supplement 2005 Annex A, A-17-A-19 (Ex. C) (listing Consolidated Bonds eligible to be exchanged for Argentine Law Bonds); *compare* FAA at 17 (listing Ferrobonos as DFCI in (i)(f)) (Ex. A) *with* Prospectus Supplement 2005 Annex A, A-17 (Ex. C) (listing Ferrobonos eligible to be exchanged for Argentine Law Bonds); *compare* FAA at 17 (listing Consolidated Hydrocarbon Bonds as DFCI in (i)(g)) (Ex. A) *with* Prospectus Supplement 2005 Annex A, A-17 (Ex. C) (listing Consolidated Hydrocarbon Bonds eligible to be exchanged for Argentine Law Bonds); *see also* Prospectus Supplement 2010 Annex A, A-1-A-17 (Ex. B) (listing as eligible for exchange, *inter alia*, DFCI bonds). Because Argentine Law Bonds issued in exchange for debt that is expressly defined in the FAA as DFCI themselves qualify as DFCI, they are excluded from the definition of External Indebtedness and thus the reach of the Injunctions. *See* FAA at 17 (Ex. A) (defining DFCI); *id.* at 16 (defining External Indebtedness to exclude DFCI).[6]

---

[6] While certain of the categories of bonds listed in the FAA as DFCI matured prior to the local exchange offers (see bonds listed in DFCI definition under (i)(a), (i)(d), and (i)(e), FAA at 17 (Ex. A)), the remaining categories outstanding were eligible to be tendered into those offers, and Argentine Law Bonds issued in exchange for those obligations constitute DFCI.

Even if they had not been issued in exchange for bonds expressly listed in the FAA as DFCI, these Argentine Law Bonds would *still* constitute DFCI because they were "offered exclusively in Argentina," *id.* at 17 (Ex. A), pursuant to 2004 and 2010 Presidential Decrees and Spanish-language instruments issued under those decrees. *See* Argentine Presidential Decree No. 1735/2004, dated Dec. 9, 2004 at Art. 1 (English translation) (Ex. P) (differentiating between a "national and international exchange transaction," with a "Prospectus Supplement, applicable to the international offer," and "Operating Procedures applicable in the REPUBLIC OF ARGENTINA"); Argentine Presidential Decree No. 563/2010, dated Apr. 26, 2010 at Art. 1 (English translation) (Ex. J) (same); Global Security (Ex. I) (security issued "to the order of the Central Bank of the Republic of Argentina"); Prospectus Supplement 2005 at S-61 (Ex. C); Prospectus Supplement 2010 at S-103 (Ex. B).

The bonds tendered to receive these Argentine Law Bonds could only be tendered (directly or indirectly) through Caja de Valores S.A., an entity located in Argentina. And the local exchanges were settled through Central de Registro y Liquidación de Instrumentos de Endeudamiento Público ("CRYL"), an Argentine clearing system "of transactions involving *Bonos del Tesoro de Argentina* and other debt securities of Argentina governed by Argentine law," Prospectus Supplement 2010 at S-117 (Ex. B), meaning that the Argentine Law Bonds issued pursuant to those exchanges were deposited with, are registered in the name of, and are cleared and paid through CRYL in Argentina. *See* Prospectus Supplement 2005 at S-19, S-56, S-67, S-74, S-77 (Ex. C); Prospectus Supplement 2010 at S-5, S-39-S-40, S-90, S-110, S-115, S-117, S-118 (Ex. B). Consistent with the local nature of the offerings, they were treated as offshore securities offerings for Securities Act purposes, and were *not* registered with the SEC under the Securities Act. The Argentine Law Bonds accordingly were offered and issued in

6

Argentina, are sitused and payable in Argentina, and are governed by Argentine law. *See* Prospectus Supplement 2005 at S-72 (Ex. C); Prospectus Supplement 2010 at S-114 (Ex. B); Declaration of Maximiliano D'Auro at ¶ 10, dated May 21, 2013.

Further confirming their status as DFCI are the Argentine Law Bonds' unique characteristics, which reflect a distinction that is made not only in the *pari passu* clause but in the market for sovereign debt more generally. Unlike the Exchange Bonds payable to BNYM, the Argentine Law Bonds:

- Were not submitted to the jurisdiction of foreign courts, including U.S. courts. *See* Prospectus Supplement 2005 at S-72 (Ex. C); Prospectus Supplement 2010 at S-114 (Ex. B).

- Include the prefix "ARARGE" in their ISIN, indicating their local Argentine issuance. Prospectus Supplement 2005 at S-105-6 (Ex. C); Prospectus Supplement 2010 at S-44, S-47, S-52 (Ex. B). (The prefix "ARARGE" is assigned to debt securities issued by the Republic and deposited at CRYL. The first two letters ("AR") are the country code assigned pursuant to ISO 6166. *See* http://www.anna-web.org/index.php/home/isinsaiso6166. "ARGE" is the code Caja de Valores, acting as National Numbering Agency for the Republic of Argentina, assigns to the Republic's local debt issuances. *See* http://www.anna-web.org/pdf_profil/AR_Members_Profile_0714.pdf and http://www.anna-web.org/index.php/numbering-agencies.); and

- Do not contain *pari passu* clauses, negative pledge covenants, events of default, acceleration provisions, or provisions for amendments or otherwise for bondholder meetings. *See* Prospectus Supplement 2005 at S-21, S-33, S-70-71 (Ex. C); Prospectus Supplement 2010 at S-42, S-61, S-103, S-113 (Ex. B).

These significant differences between the Republic's external and domestic indebtedness are widely recognized in the financial markets, and indeed by plaintiffs, who have, until now, never sought to enjoin payments on them.

*Second*, and completely outside of the context of the 2005 and 2010 exchange offers, the Republic issued additional Argentine Law Bonds that now total approximately $6.1

billion in outstanding principal amount.[7]  Specifically, the Republic issued approximately $4.3 billion in Argentine Law Bonds at various points from 2007 to 2011,[8] and an additional $1.75 billion to the Spanish oil company Repsol, S.A. ("Repsol") in 2014 as part of a negotiated settlement of the disputes between Repsol and the Republic,[9] which we understand Repsol subsequently resold in the market.

This group of Argentine Law Bonds does not constitute "Exchange Bonds" even under plaintiffs' view – because the bonds were not issued pursuant to *any* exchange offer – and thus would not properly be subject to the Injunctions even if they were erroneously considered External Indebtedness subject to the *pari passu* clause.  See NML Injunction ¶ 2(a) (Ex. E) ("Whenever the Republic pays any amount due under the terms of the [Exchange Bonds], the Republic shall concurrently or in advance make a 'Ratable Payment' to NML.").  But they are *not* External Indebtedness because they too, like the Argentine Law Bonds issued in 2005 and 2010, are DFCI.  While these Argentine Law Bonds were not issued in exchange for debt expressly listed in the FAA as DFCI, they otherwise share *all* of the characteristics as the

---

[7] This second category of Argentine Law Bonds is indistinguishable from certain Argentine Law Bonds issued in connection with the Argentine local exchanges, because consistent with market practice the Republic issued them through a securities reopening, a process by which an issuer issues additional amounts of a previously issued security.  Issuing securities through a reopening is a common practice that benefits beneficial interest holders because the newly issued securities are fungible with the original securities, which makes them an easily transferrable, liquid asset.  Fungible bonds issued pursuant to a reopening have by definition the same identification code (an International Securities Identification Number ("ISIN") or Committee on Uniform Security Identification Procedures ("CUSIP") number) as previously issued bonds.  Distinguishing between or tracing the origins of bonds with the same ISIN, such as the Argentine Law Bonds at issue here, is "operationally impossible," even for the world's most sophisticated financial institutions.  See Declaration of Federico Elewaut ¶ 4, dated July 28, 2014.

[8] See Joint Resolution 205/2007 and 34/2007, dated June 5, 2007 (Ex. O); Joint Resolution 449/2007 and 94/2007, dated Nov. 26, 2007 (Ex. N); Joint Resolution 62/2010 and 21/2010, dated Mar. 15, 2010 (Ex. M); Joint Resolution 77/2010 and 29/2010, dated Mar. 31, 2010 (Ex. L); Joint Resolution 198/2010 and 57/2010, dated July 26, 2010 (Ex. K); Joint Resolution 175/2011 and 45/2011, dated May 30, 2011 (Ex. H); Joint Resolution 242/2011 and 68/2011, dated July 18, 2011 (Ex. G); and Joint Resolution 364/2011 and 98/2011, dated Sept. 28, 2011 (Ex. F).

[9] See Resolution 26/2014, dated April 30, 2014 (Ex. D).

Argentine Law Bonds issued in the local exchanges and therefore also constitute DFCI excluded from the scope of the *pari passu* clause because they were "offered exclusively" in Argentina. FAA at 17 (Ex. A).

The Court should accordingly grant Citibank's Motion. As made clear above, there is no basis in the Injunctions or the FAA provisions that they enforce to interfere with payments on the Argentine Law Bonds. The Court has repeatedly and correctly observed that the Argentine Law Bonds have always been treated differently from the BNYM Exchange Bonds subject to the Injunctions. The Court should now give effect to those statements by vacating the Citibank Injunction and making clear that the *pari passu* Injunctions do not prevent holders of the Argentine Law Bonds from receiving the payments to which they are entitled.

## CONCLUSION

For the foregoing reasons, the Court should grant Citibank's Motion.

Dated: New York, New York
September 23, 2014

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: __/s/ Carmine Boccuzzi_____
Jonathan I. Blackman (jblackman@cgsh.com)
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000
Attorneys for the Republic of Argentina