UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

NML CAPITAL, LTD.,

                      Plaintiff,

        v.

THE REPUBLIC OF ARGENTINA,

                 Defendant.

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

--------------------------------------------------------- x

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

                    Plaintiffs,

        v.

THE REPUBLIC OF ARGENTINA,

                 Defendant.

09 Civ. 8757 (TPG)
09 Civ. 10620 (TPG)

--------------------------------------------------------- x

AURELIUS OPPORTUNITIES FUND II, LLC
and AURELIUS CAPITAL MASTER, LTD.,

                    Plaintiffs,

        v.

THE REPUBLIC OF ARGENTINA,

                 Defendant.

10 Civ. 1602 (TPG)
10 Civ. 3507 (TPG)

(captions continued on next page)

--------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO HOLD THE REPUBLIC OF ARGENTINA IN CIVIL CONTEMPT AND TO IMPOSE SANCTIONS

```
-------------------------------------------- x
AURELIUS CAPITAL MASTER, LTD. and          :
AURELIUS OPPORTUNITIES FUND II, LLC,        :        10 Civ. 3970 (TPG)
                                            :        10 Civ. 8339 (TPG)
                Plaintiffs,                 :
                                            :
        v.                                  :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                Defendant.                  :
-------------------------------------------- x
BLUE ANGEL CAPITAL I LLC,                   :
                                            :
                Plaintiff,                  :        10 Civ. 4101 (TPG)
                                            :        10 Civ. 4782 (TPG)
        v.                                  :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                Defendant.                  :
-------------------------------------------- x
OLIFANT FUND, LTD.,                         :
                                            :
                Plaintiff,                  :        10 Civ. 9587 (TPG)
                                            :
        v.                                  :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                Defendant.                  :
-------------------------------------------- x
PABLO ALBERTO VARELA, et al.,               :
                                            :
                Plaintiff,                  :        10 Civ. 5338 (TPG)
                                            :
        v.                                  :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                Defendant.                  :
-------------------------------------------- x
```

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

HISTORY OF THE MATTER ............................................................................................. 2

     A.    Argentina Breaches Its Obligations Under The FAA ............................................ 2

     B.    The Court Enters Orders To Remedy Argentina's Breach .................................... 3

     C.    Argentina Announces That It Will Not Obey The Orders .................................... 6

     D.    Argentina Falsely Represents That It Will Obey The Orders, And Then
          Immediately Violates Them Once The Supreme Court Denies Certiorari ............. 7

     E.    Argentina Violates the Orders Again on September 22 ......................................... 12

ARGUMENT ........................................................................................................................ 13

     I.    ARGENTINA IS IN CONTEMPT OF COURT ................................................... 13

     II.    SANCTIONS ARE WARRANTED ...................................................................... 19

          A.    A Fine Is The Appropriate Initial Sanction ............................................... 20

          B.    In Addition To Coercive Sanctions, Plaintiffs Should Receive An
             Award Of Attorneys' Fees To Provide At Least Partial
             Compensation For The Losses They Suffered Due To Argentina's
             Repeated And Willful Noncompliance ....................................................... 22

CONCLUSION ..................................................................................................................... 23

i

## **TABLE OF AUTHORITIES**

**Cases**

*Armstrong v. Guccione,*
  470 F.3d 89 (2d Cir. 2006) ...................................................................... 13

*Aurelius Capital Partners, LP v. Republic of Argentina,*
  No. 07 Civ. 2715, Dkt. No. 200 (S.D.N.Y. May 29, 2009) ......................... 17-18

*Autotech Techs. LP v. Integral Research & Dev.,*
  499 F.3d 737 (7th Cir. 2007) ...................................................................... 17

*Belize Telecom Ltd. v. Government of Belize,*
  No. 05 Civ. 20470, 2005 U.S. Dist. LEXIS 18592 (S.D. Fla. Apr. 12, 2005) .............. 17, 21

*Chabad v. Russian Fed'n,* 915 F. Supp. 2d 148 (D.D.C. 2013) .............................. 17, 21

*Constr. Tech., Inc. v. Cybermation, Inc.,*
  965 F. Supp. 416 (S.D.N.Y. 1997) ............................................................... 19

*EM Ltd. v. Republic of Argentina,*
  473 F.3d 463 (2d Cir. 2007) ........................................................................ 2

*Export-Import Bank of the Republic of China v. Grenada,*
  No. 06 Civ. 2469, 2010 WL 5463876 (S.D.N.Y. Dec. 29, 2010) ........................... 17

*FG Hemisphere Associates, LLC v. Democratic Republic of Congo,*
  637 F.3d 373 (D.C. Cir. 2011) ............................................................... 17, 20, 21

*First City, Texas-Houston, N.A. v. Rafidain Bank,*
  281 F.3d 48 (2d Cir. 2002) ........................................................................ 17

*King v. Allied Vision, Ltd.,*
  65 F.3d 1051 (2d Cir. 1995) ....................................................................... 14

*Musalli Factory for Gold & Jewelry Co. v. N.Y. Fin. LLC,*
  No. 06 Civ. 82, 2010 WL 2382415 (S.D.N.Y. June 19, 2013) ............................... 13

*N.A. Sales Co, Inc. v. Chapman Indus. Corp.,*
  736 F.2d 854 (2d Cir. 1984) ................................................................... 18-19

*N.Y. State Nat'l Org. for Women v. Terry,*
  886 F.2d 1339 (2d Cir. 1989) ..................................................................... 21

*NML Capital, Ltd. v. Republic of Argentina,*
  699 F.3d 246 (2d Cir. 2012) ("*NML I*") .................................................... 3, 21

ii

**Page**

*NML Capital, Ltd. v. Republic of Argentina,*
    727 F.3d 230 (2d Cir. 2013) ("*NML II*") ...........................................................6, 16

*Olifant Fund, Ltd. v. The Republic of Argentina,*
    No. 10 Civ. 9578...........................................................................................................5

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,*
    369 F.3d 645 (2d Cir. 2004) .............................................................................18, 19, 20

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,*
    No. 99 Civ. 10175, 2002 WL 1988200 (S.D.N.Y. Aug. 27, 2002) ........................19

*Republic of Argentina v. NML Capital, Ltd.,*
    134 S. Ct. 2250 (2014)................................................................................18, 20

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ...............................................................................17

*S. New England Tel. Co. v. Global Naps Inc.,*
    624 F.3d 123 (2d Cir. 2010) ...................................................................................13

*Servaas Inc. v. Republic of Iraq,*
    No. 09 Civ. 1862, 2014 WL 279507 (S.D.N.Y. Jan. 24, 2014)...............................17

*Weitzman v. Stein,*
    98 F.3d 717 (2d Cir. 1996) ....................................................................................22

**Statutes**

Public Debt Securities Law No. 26,984.........................................................................12, 16

15381191.7.LITIGATION

Plaintiffs NML Capital, Ltd., Aurelius Capital Master, Ltd., Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., Blue Angel Capital I LLC, Pablo Alberto Varela, et al., and Olifant Fund, Ltd. (collectively, "Plaintiffs"), through their undersigned counsel, respectfully submit this Memorandum of Law in support of their motion to hold defendant The Republic of Argentina (the "Republic" or "Argentina") in civil contempt and to impose sanctions.

## PRELIMINARY STATEMENT

This is a clear case of contempt of court. Argentina has repeatedly and willfully violated the orders of the Court. Argentina has repeatedly and willfully declared its intention to continue to violate these orders. The highest governmental officials of Argentina have repeatedly and willfully proclaimed their contempt, disdain and disregard for the Court and its rulings. The public statements of Argentina have been replete with derogatory and disparaging comments about the Court and the judicial system of the United States. It is difficult to imagine a clearer record of contemptuous conduct. The Court's prior admonitions have not deterred Argentina; indeed, they have been openly and brazenly defied. Accordingly, Plaintiffs are filing this motion requesting an order finding Argentina in contempt and imposing monetary and other sanctions as warranted by law.

Argentina's most recent effort to further violate the Amended February 23 Orders is the full page so-called "Legal Notice" published on September 22, 2014 in The New York Times and The Wall Street Journal (among others newspapers) notifying the Exchange Bondholders that it has formally requested the immediate resignation of the trustee for some of the Exchange Bonds, The Bank of New York Mellon ("BNY"), and threatening to remove BNY if it does not immediately resign.   The September 22 notice also encouraged the Exchange

Bondholders to use the "rights and tools necessary to remedy the lack of eligibility of BNY Mellon to serve as Trustee" and to "actively pursu[e] any other actions as may be proper to enforce their rights, such as filing of appeals from the orders of the District Court of the Southern District of New York." (Ex. 46[1] ["Legal Notice" published 9/22/14]).

## HISTORY OF THE MATTER

The Court has previously, and repeatedly, warned Argentina that it was in violation of the Court's orders. Only weeks ago the Court cautioned that absent a "cessation" of Argentina's unlawful conduct, "it will be necessary to consider contempt of court." (Ex. 36 at 9:19-24 [8/8/14 Tr.]). Far from ceasing that unlawful conduct, Argentina has intensified its efforts to do exactly what the Court forbade: It has passed new legislation to violate the obligations of the Equal Treatment Provision and evade this Court's jurisdiction, and to punish anyone who impedes Argentina's illegal objectives, such as BNY. This course of conduct, culminating in Argentina's most recent ad campaign, can only be considered contempt.

A.    **Argentina Breaches Its Obligations Under The FAA**

Plaintiffs are the beneficial owners of bonds (the "Bonds") that Argentina issued, beginning in 1994, pursuant to a Fiscal Agency Agreement dated October 19, 1994 (the "FAA"). In light of its long "history of defaulting on, or requiring restructuring of, its sovereign obligations," *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007), Argentina sought to reassure prospective purchasers of its bonds by making several promises in the FAA that would protect investors in the case of another default. Argentina, for example, promised that

---

[1] Unless otherwise noted, all citations to Exhibits reference the exhibits annexed to the September 24, 2014 Declaration of Robert A. Cohen submitted herewith.

2

any disputes arising under the FAA would be adjudicated in New York courts under New York law, meaning that investors would have recourse to an impartial judiciary to enforce their contractual rights. (Ex. 1 §§ 22, 23 [FAA]). Argentina also agreed to "rank" its "payment obligations" under the Bonds "at least equally" with its payment obligations on its other "External Indebtedness" (*Id.* § 1(c)) – a commitment the Second Circuit has referred to as the "Equal Treatment Provision." *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 251 (2d Cir. 2012) ("*NML I*").

Those promises took on great importance in 2001, when Argentina again defaulted on its debt, and declared a moratorium on payments on more than $80 billion of its debt – including the Bonds. *NML I*, 699 F.3d at 251. Argentina has renewed that moratorium annually. *Id.* After refusing for several years even to negotiate with the holders of its defaulted bonds, in 2005 Argentina conducted an exchange offer, pressuring its creditors to swap their bonds for newly issued bonds (the "Exchange Bonds") for pennies on the dollar – which some investors agreed to do. *Id.* at 252. In 2010, Argentina conducted another exchange offer for creditors who still had not agreed to the Republic's lopsided exchange terms. *Id.* at 252-53.

Argentina has repeatedly disclaimed any intent to make payments to those creditors who did not accept the 2005 or 2010 swap. Indeed, it codified that refusal in Argentine law – including a payment moratorium in its budget laws, and in a series of statutes forbidding the Argentine Executive from paying what it owes on the FAA Bonds. *See id.* at 252-53. Since 2005, Argentina has honored its obligations under the Exchange Bonds, while refusing to make payments on Plaintiffs' Bonds, in contravention of the Equal Treatment Provision.

**B.    The Court Enters Orders To Remedy Argentina's Breach**

Plaintiffs sued Argentina for its egregious violations of the Equal Treatment Provision, seeking (as relevant here) specific performance of that pledge. The Court granted

3

Plaintiffs partial summary judgment and held that Argentina was violating the Equal Treatment Provision by "relegating [their] bonds to a non-paying class" and "persisting in its refusal to satisfy its payment obligations currently due under [Plaintiffs'] Bonds" while "mak[ing] payments currently due under the Exchange Bonds." (*See, e.g.*, Ex. 2 [12/7/11 Order]). As a remedy for Argentina's breach, and to prevent Argentina from evading its contractual obligations in the future, the Court entered orders on February 23, 2012 compelling Argentina to comply with its equal treatment obligations. On Argentina's appeal, the Second Circuit affirmed the central provisions of those orders, and remanded for clarification of two narrow issues. *NML I* 699 F.3d at 251. On remand, the Court entered Amended February 23, 2012 Orders ("Amended February 23 Orders") in each of these actions.

The Amended February 23 Orders, like the original orders, require Argentina to make a "Ratable Payment" to Plaintiffs whenever it pays any amount due under the Exchange Bonds, and enjoin Argentina from making any payment on the Exchange Bonds without making a Ratable Payment:

> 2.      The Republic accordingly is permanently ORDERED to specifically perform its obligations to Plaintiffs under Paragraph 1(c) of the FAA as follows:
>
> a.      Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" to [Plaintiffs] (as defined below and as further defined in the Court's Opinion of November 21, 2012 [in the *NML Capital, Ltd. v. The Republic of Argentina* cases, Nos. 08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708)].
>
> b.      Such "Ratable Payment" that the Republic is ORDERED to make to [Plaintiffs] shall be an amount equal to the "Payment Percentage" (as defined below) multiplied by the total amount currently due to Plaintiffs in respect of the bonds at issue in

4

these cases …, including pre-judgment interest (the "[Plaintiffs'] Bonds").

c.      Such "Payment Percentage" shall be the fraction calculated by dividing the amount actually paid or which the Republic intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.

d.      The Republic is ENJOINED from violating Paragraph 1(c) of the FAA, including by making any payment under the terms of the Exchange Bonds without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to [Plaintiffs].

….

i.      Concurrently or in advance of making a payment on the Exchange Bonds, the Republic shall certify to the Court and give notice of this certification to its Participants, and to counsel for [Plaintiffs], that the Republic has satisfied its obligations under this ORDER to make a Ratable Payment to [Plaintiffs].

(Exs. 3-6.)[2]

The Amended February 23 Orders (and the original orders) also expressly

prohibit Argentina from taking steps to evade them:

4.      The Republic is permanently PROHIBITED from taking action to evade the directives of this ORDER, render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with the ORDER, including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds, without obtaining prior approval by the Court…

(*Id.*).

---

[2] The version of the Amended February 23 Orders issued in *Olifant Fund, Ltd. v. The Republic of Argentina*, No. 10 Civ. 9578, contains different paragraph numbering, although the substance is identical.

The Court stayed the effectiveness of the Orders during the pendency of the Republic's appeal, but prohibited Argentina from taking any steps to evade the Orders in the meanwhile:

> [T]he Republic shall not during the pendency of the appeal to the Second Circuit take any action to evade the directives of the February 23, 2012 Orders in the event they are affirmed, render them ineffective in the event they are affirmed, or diminish the Court's ability to supervise compliance with the February 23, 2012 Orders in the event they are affirmed, including without limitation, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds, without prior approval of the Court.

(Ex. 7 ("March 5 Order") [3/5/12 Order]).

## C.   Argentina Announces That It Will Not Obey The Orders

Just months after the Court first entered injunctive relief, Argentina made clear that it would do everything it could to violate and evade the Court's orders.  At oral argument before the Second Circuit on July 23, 2012, "counsel for Argentina told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013) ("*NML II*").

Sure enough, just days after the Second Circuit affirmed the Amended February 23 Orders, *NML II*, 727 F.3d at 243-44, Argentina launched its campaign to violate and evade the Court's orders.  On August 26, 2013, Argentine President Cristina Fernández de Kirchner gave a televised address criticizing the rulings of the Court and the Second Circuit, and announced an evasion plan, pursuant to which Exchange Bondholders would be permitted to exchange their bonds for bonds payable in Argentina, in an attempt to place payments on those bonds outside of the Court's jurisdiction.  (Ex. 8 [Tr. of 8/26/13 Address]).

The Court responded firmly and unambiguously.  In an order dated October 3, 2013 (the "October 3 Order"), the Court again ordered Argentina not to take any steps to evade its orders:

6

> 2.      ORDERED that the Republic shall not-either directly or through any representative, agent, instrumentality, political subdivision, or other person or entity acting on behalf of the Republic-take any action to attempt to evade the purposes and directives of the Amended February 23 Orders, attempt to render those Orders ineffective, or attempt to diminish the Court's ability to supervise compliance with the Amended February 23 Orders, including without limitation, altering or amending the processes or special transfer mechanisms by which it makes payments on the Exchange Bonds without prior approval of the Court.

(Ex. 9.) And the Court further condemned the evasion scheme announced by President Kirchner:

> 3.      DECLARED that for the avoidance of doubt (i) the implementation of the plan to allow Exchange Bonds to be exchanged for securities or similar instruments payable in Argentina, which was announced by President Fernandez de Kirchner in her speech of August 26, 2013, (ii) implementation of any functionally equivalent or reasonably similar plan, or (iii) any step towards implementing (including without limitation the formulation or design of) such a plan or a functionally equivalent or reasonably similar plan, each would violate the Anti-Evasion Injunction of the March 5 Order and Paragraph 2 of this ORDER.

(*Id.*)

## D.   Argentina Falsely Represents That It Will Obey The Orders, And Then Immediately Violates Them Once The Supreme Court Denies Certiorari

In a hollow attempt to procure Supreme Court review, Argentina seemingly changed its tune and falsely represented that it would comply with the Amended February 23 Orders. Argentina told the Supreme Court that "absent relief [it] w[ould] comply with the orders under review." (Ex. 10 [5/27/14 Reply Br. at 13]). Three days later, Argentina's counsel repeated that falsehood to this Court: "[T]he Republic will comply with the pari passu orders . . . . [T]here is no plan to evade." (Ex. 11 at 5:5-10 [5/30/14 Tr.]).

Yet, as soon as the Supreme Court denied certiorari on June 16, 2014, (134 S. Ct. 2819 (2014)), Argentina immediately set out to evade this Court's orders. President Kirchner declared in a televised address that the Republic would not "be subjected to such extortion."

7

(Ex. 12 [6/16/14 Statement]). The very next day, Argentine Economy Minister Axel Kicillof announced a plan – nearly identical to the plan announced in August 2013 – to evade the Amended February 23 Orders by swapping the Exchange Bonds for new bonds presumably outside the Court's reach. (Ex. 13 [6/17/14 Statement]).

The Court held a hearing the next day, on June 18, 2014, and ruled in no uncertain terms that Argentina was acting illegally. As the Court noted, a "mechanism of the kind proposed by the finance minister would be a violation of the existing procedures and orders established by the Court." (Ex. 14 at 29:17-20 [6/18/14 Tr.]). Two days later, the Court issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of the Court's orders:

> 1.      In his June 17, 2014 speech, Argentina's Economy Minister Axel Kicillof proposed that Argentina initiate steps to carry out a debt exchange to pay the exchange bondholders in Argentina under Argentine law.
>
> 2.      This court rules that the above proposal of the Economy Minister is in violation of the rulings and procedures now in place in the Southern District of New York, and the Republic of Argentina is prohibited from carrying out the proposal of the Economy Minister.

(Ex. 15, [6/20/14 Order]).

Six days later, in direct violation of the Amended February 23 Orders, Argentina attempted to make the June 30 payment due on the Exchange Bonds without making a Ratable Payment to Plaintiffs. On June 26, 2014, the Republic transferred $832 million to banks that process Exchange Bond payments (including $539 million to BNY, the trustee for some of the Exchange Bonds). (*See* Ex. 16 [6/26/14 Bloomberg Article]). Argentina did not make a Ratable Payment to Plaintiffs.

Again the Court condemned Argentina's illegal behavior. At a hearing on June 27, 2014, the Court ruled that "this payment cannot be made, and anybody who attempts to make it will be in contempt of court by the express terms of this order." (Ex. 17 at 23:22-24 [6/27/14 Tr.]). The Court also declared that the "Republic had no business making any payment to [BNY] in the way and for the purpose that it did. It was improper. It was a violation of court orders binding on the Republic, and the Republic in making a payment to [BNY] was in violation." (*Id.* at 32:24-33:3; *see also id.* at 24:1-2 ("This payment was illegal and will not be made.") [6/27/14 Tr.]).

On July 22, 2014, the Court again ruled that the payment to BNY was "improper" and "illegal." (Ex. 43 at 41:4-5, 42:7-9 [7/22/14 Tr.]). In an order dated August 6, 2014 (the "August 6 Order"), the Court held that "the payment by Argentina to BNY . . . was illegal and a violation of the Amended February 23 Orders." (Ex. 18 ¶ 1). The Court also ordered BNY to hold the funds, and expressly prohibited Argentina from taking any "steps to interfere with BNY's retention" of the funds. (*Id.* ¶¶ 2-3).

Despite the Court's unambiguous ruling that Argentina's attempt to make the June 30 payment was illegal, on June 29, 2014, Argentina took out full page newspaper advertisements baldly asserting that it had "proceeded to pay principal and interest on its [Exchange Bonds] . . . in an amount equivalent to USD 832 million, 539 million of that figure deposited in [BNY] accounts," and calling the Court's rulings "whimsical and absurd." (Ex. 19 [6/29/14 Ad]). Argentina's Ministry of Economy and Public Finances has demanded that BNY distribute the funds it holds to the Exchange Bondholders in violation of the Court's orders. (Exs. 20-21 [7/3/14 and 8/6/14 Letters to BNY]).

9

Argentina also announced that it will make future payments on the Exchange Bonds in violation of the Amended February 23 Orders, and that it expects the banks that process those payments to participate in Argentina's violation. (*See, e.g.*, Ex. 20-22 [7/3/14 Ltr. to BNY, 8/6/14 Ltr. to BNY, 8/6/14 Ltr. to Citibank]). Indeed, Argentina has even commanded Citibank not to seek clarification from the Court of Citibank's obligations under the Court's Orders. (Ex. 22 [8/6/14 Ltr. to Citibank]). BNY has not acceded to Argentina's illegal demands; in retribution, the Republic has stripped BNY of its authorization to operate in Argentina (*see* Exs. 27-28 [8/26/14 Bloomberg Articles]) and taken steps to replace BNY with an entity that will do its bidding.

Argentina has also continued its ad campaign to encourage the Exchange Bondholders to sue BNY and remove it as trustee. On July 8, 2014, Argentina published a "Legal Notice" advising certain of the Exchange Bondholders of their purported entitlement to the funds transferred to BNY. (Ex. 24 [7/8/14 Legal Notice]. Despite the Court's admonition at a hearing held on August 1, 2014 that Argentina must refrain from publishing "half-truths,"[3] on August 6 and 7, 2014, Argentina placed two-page advertisements in various newspapers aimed at the Exchange Bondholders in which it described and encouraged the Exchange Bondholders to follow a plan to violate the Amended February 23 Orders, including, among other things, informing the Exchange Bondholders of their purported right to "remove the Trustee [BNY] and appoint a successor trustee." (Ex. 25-26 [8/6/14 Legal Notice, 8/7/14 Legal Notice]). This

---

[3] The Court found that "the Republic has issued public statements which have been highly misleading and that must be stopped and I am counting on their counsel, Cleary Gottlieb, to monitor that and to stop that or help stop that by giving good advice to their client." (Ex. 35 at 4:24-5:3 [8/1/14 Tr.]).

prompted the Court to convene an emergency hearing on August 8, 2014, at which the Court

stated:

> The reason we are here today is because of the two-page document entitled "Legal Notice" which appeared on two pages of the Wall Street Journal and also of the New York Times.
>
> Last week, last Friday, we had a meeting, and I went through at that time a complete statement of the obligations of the Republic that are relevant to this matter. The Republic had issued statements omitting relevant facts about its obligations and, of course, that needed to stop.
>
> It goes without saying that during that meeting *I warned that misleading statements by the Republic must cease,* and I put it upon counsel for the Republic to assist in seeing that that was done.
>
>     \* \* \*
>
> Surely there will be a cessation of false and misleading statements by the Republic. Surely there will be a cessation. *If there is not, it will be necessary to consider contempt of court.* But the court earnestly, earnestly hopes and desires that the matter will not get into that posture and that negotiations can continue.

(Ex. 36 at 3:2-14; 9:19-24 [8/8/14 Tr.] (emphasis added)).

      In furtherance of its evasion plans and in further violation of the Amended

February 23 Orders, the President of Argentina announced on August 19, 2014 that the Republic

would enact legislation permitting the Ministry of Economy and Public Finances to: (i) remove

BNY as trustee and designate an affiliate of the state-owned Banco de la Nación Argentina as its

replacement to process payments the Republic makes in violation of the Amended February 23

Orders, and (ii) implement a swap of the Exchange Bonds for new securities governed by

Argentine law and subject to Argentine jurisdiction under identical financial terms and

conditions. (*See* Exs. 29-31 [8/20/14 WSJ, 8/20/14 Bloomberg, Proposed Legislation]).

President Kirchner attacked the Court directly, stating that it had acted "with a complete lack of

knowledge," accusing it of allowing Plaintiffs to "dictat[e] and manag[e] the situation in each one of the hearings," and arguing that it had "invented, in the service of the vulture funds, a novel form of coercion." (Ex. 32 at 4-5 [8/19/14 Speech Tr.]).

The next morning, Minister of Economy Kicillof confirmed that the proposed legislation would use only Argentine institutions to facilitate payments. (*See* Ex. 33 [8/20/14 Buenos Aires Herald Press Release]). Minister Kicillof accused this Court of making "a blind, inexplicable, excessive, and unjust decision in which no one knows what to do," and stated flatly that the Court's orders "cannot be carried out." (Ex. 34 [8/20/14 Press Release]).

The Court convened an emergency hearing on August 21 to address Argentina's misconduct. As it had previously, the Court ruled in no uncertain terms that Argentina's "proposal is a violation of the current orders of this Court and of the Second Circuit. It is illegal, and the Court directs that it cannot be carried out." (Ex. 37 at 21:13-22 [8/21/14 Tr.]). As the Court explained, "[t]he proposal of August 19 would provide for payment of interest to the exchangers, but no payment of the other obligation; therefore, the proposal of August 19 is not a lawful carrying out of the obligations of the Republic." (*Id.* at 22:22-25.).

Argentina paid absolutely no heed to the Court. The legislation was enacted as Law No. 26,984, and Argentina proceeded to implement its evasion plan. (Ex. 38 [Public Debt Securities Law No. 26,984]; Ex. 44 [9/11/14 Bloomberg]). Argentina even had the audacity to send its Finance Secretary to New York to meet with investment firms that it wanted to participate in the illegal bond swap, thumbing its nose at the Court while just blocks away from the courthouse. (Exs. 39-41 [9/4/14 Bloomberg, 9/5/14 Ámbito, 9/5/14 Clarín]).

**E.    Argentina Violates the Orders Again on September 22**

As described above, two days ago Argentina published a full-page so-called "Legal Notice" in The New York Times and The Wall Street Journal. The notice discloses that

12

Argentina has taken steps to remove BNY as Trustee for the Exchange Bonds in flagrant violation of the prohibition in paragraph 4 of the Amended February 23, 2012 Order against "taking any steps to diminish the Court's ability to supervise compliance with the ORDER, including but not limited to altering or amending the process or specific transfer mechanism by which it makes payments on the Exchange Bonds without prior approval of the Court." The notice itself is also a direct violation of paragraph 4 of the Orders because it takes the step of encouraging third parties to assist it in altering the payment mechanism by using the "rights and tools necessary to remedy the lack of eligibility of BNY Mellon to serve as Trustee." (Ex. 46 ["Legal Notice" 9/22/14]).

## ARGUMENT

### I.

### ARGENTINA IS IN CONTEMPT OF COURT

Federal courts possess the "inherent power to enforce compliance with their lawful order[s] through civil contempt." *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). The inherent power to hold a party in contempt "is a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice." *Musalli Factory for Gold & Jewelry Co. v. N.Y. Fin. LLC*, No. 06 Civ. 82, 2010 WL 2382415, at *2 (S.D.N.Y. June 19, 2013) (internal citations omitted). A court may find a party in civil contempt whenever "[1] the order violated by the contemnor is clear and unambiguous, [2] the proof of non-compliance is clear and convincing, and [3] the contemnor was not reasonably diligent in attempting to comply." *S. New England Tel. Co. v. Global Naps Inc.*, 624 F.3d 123, 145 (2d Cir. 2010). Here, each of these elements is clearly satisfied.

13

*First*, the Court's orders are unquestionably clear and unambiguous. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) ("A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed.'") (quoting *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)). The Amended February 23 Orders (among other things): (1) require Argentina to make a Ratable Payment to Plaintiffs whenever it makes payment on any Exchange Bond; (2) enjoin Argentina from making payment on any Exchange Bond without also making a Ratable Payment to Plaintiffs; (3) specify how the required Ratable Payment is calculated; (4) prohibit Argentina from taking any steps to evade the Orders; and (5) specifically prohibit Argentina from altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds. (Exs. 3-6). The Second Circuit affirmed the Orders, and then affirmed them again after they were clarified on remand. The March 5 Order and the October 3 Order similarly prohibit Argentina from taking steps to evade the Orders during the pendency of its appeals. (Exs. 7, 9). The August 6 Order bars Argentina from taking any "steps to interfere with BNY's retention of the Funds in accordance with the terms of this Order." (Ex. 18). By virtue of the clear terms of the Court's orders, Argentina knows exactly what it is required to do, and what it is prohibited from doing.

*Second*, as detailed above, Argentina has repeatedly and blatantly violated the Amended February 23 Orders and this Court's other orders, and the Court has already has ruled that Argentina's conduct is illegal and in violation of the Court's orders. Yet, Argentina has continued to defy the Court, publishing yet another Legal Notice in national newspapers on Monday. Specifically, and as set forth in more detail above:

- On August 26, 2013, immediately following the Second Circuit's affirmance of the Amended February 23 Orders, Argentina announced a

14

plan to evade those Orders by permitting Exchange Bondholders to swap their bonds for bonds payable in Argentina. (Ex. 8 [Tr. of 8/26/13 Address].)  The Court ruled in the October 3 Order that this plan was a violation of the anti-evasion provisions of the Court's orders.  (Ex. 9 ¶ 3 [10/3/13 Order]).

- On June 17, 2014, immediately following the Supreme Court's denial of certiorari, Argentina again announced a plan to evade the Amended February 23 Orders through a "swap" of the Exchange Bonds. (Ex. 13 [6/17/14 Kicillof Statement].)  The Court again ruled that this plan was a violation of its Orders, and prohibited Argentina from carrying it out. (Exs. 14-15 [6/18/14 Tr., 6/20/14 Order]).

- On June 26, 2014, Argentina transferred $832 million (including $539 million to BNY) for the purpose of making payment on the Exchange Bonds, but did not make a Ratable Payment to Plaintiffs. (Ex. 16 [6/26/14 Bloomberg].)  The Court ruled that this transfer was illegal and a violation of the Amended February 23 Orders, and that it "will not be made." (Exs. 17, 18 [6/27/14 Tr., 8/6/14 Order].)  The Court ordered BNY to retain the funds it had received, and prohibited Argentina from interfering with BNY's retention of the funds. (Ex. 18 [8/6/14 Order]).

- Notwithstanding the Court's ruling that Argentina's attempted payment was illegal and "will not be made," Argentina has repeatedly asserted that it has in fact made payment, including in: (1) newspaper advertisements published June 29, 2014 and August 7, 2014 (Exs. 19, 26); (2) "Legal Notices" to Exchange Bondholders issued July 8, 2014 and August 6, 2014 (Exs. 24-25); and (3) letters to BNY sent July 3, 2014 and August 6, 2014 (Exs. 20-21).

- Argentina has repeatedly pressed BNY to release the funds it is currently holding (Exs. 20-21), has encouraged the Exchange Bondholders to sue BNY and remove it as trustee (Exs. 24-26), and has purportedly stripped BNY of its authorization to operate in Argentina, in retaliation for BNY's compliance with this Court's orders (Exs. 27-28).  These steps are clear violations of the Amended February 23 Orders, as well as this Court's express directive that Argentina not interfere with BNY's retention of the funds.  Argentina has also pressed banks, including BNY and Citibank, to participate in future illegal payments that it intends to make.  (Exs. 20-22 [7/3/14 Ltr. to BNY, 8/6/14 Ltrs. to BNY and Citibank]).

- On August 19, 2014, Argentina announced that it would enact legislation that would remove BNY as trustee for some of the Exchange Bonds and replace it with an affiliate of the state-owned Banco de la Nación Argentina, and that would implement a swap of the Exchange Bonds for bonds governed by Argentine law and payable in Argentina.  (Exs. 29-34 [8/20/14 Wall. St. J., 8/20/14 Bloomberg, Proposed Legislation, 8/20/14

15

Buenos Aires Herald, 8/20/14 Press Release].)  The Court ruled that this legislation was a violation of its Orders, and "direct[ed] that it cannot be carried out."  (Ex. 37 [8/21/14 Tr.]).

- Argentina nevertheless passed Law No. 26,984, which became law on September 11, 2014 (Ex. 38 [Public Debt Securities Law No. 26,984, Sovereign Payment, Debt Restructuring, Passed September 10, 2014, Enacted September 11, 2014]; Ex. 45 [9/11/14 Wall St. J.]).

- In early September 2014, Argentina sent its Finance Secretary to New York to meet with Exchange Bondholders to convince them to participate in the bond swap, which the Court had already declared illegal and already prohibited from being carried out.  (Exs. 39-41 [9/4/14 Bloomberg, 9/5/14 Ámbito, 9/5/14 Clarín]).

- On September 22, 2014, Argentina published so-called "Legal Notices" in The New York Times and The Wall Street Journal (among other papers) notifying the Exchange Bondholders that it had formally requested the immediate resignation of the BNY as trustee and threatened to remove BNY if it did not immediately resign.  The notices also encouraged the Exchange Bondholders to use the "rights and tools necessary to remedy to lack of eligibility of BNY Mellon to serve as Trustee" and to "actively pursu[e] any other actions as may be proper to enforce their rights, such as filing of appeals from the orders of the District Court of the Southern District of New York."  (Ex. 46 [September 22, 2014 "Legal Notice" 9/22/14]).

These activities are clear violations of the Court's orders, and the proof of non-compliance is clear and convincing.

*Third*, Argentina has not been reasonably diligent in attempting to comply. To the contrary, Argentina has openly refused to obey the Court's orders.  Argentina's counsel told the Second Circuit in July 2012 that Argentina "'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld."  *NML II*, 727 F.3d at 238.  When the Argentine Minister of Economy announced the latest iteration of Argentina's illegal swap plan in August 2014, he asserted that the Court's orders "cannot be carried out," and accused the Court of making a "blind, inexplicable, excessive, and unjust decision."  (Ex. 34 [8/20/14 Press Release]).  When Argentina violated the Amended February 23 Orders by transferring $539

16

million to BNY in June 2014, it issued a defiant statement calling the Court's orders "whimsical and absurd," accusing the Court of "bias in favour of the vulture funds," and warning "the United States about the consequences of its acts, in view of the international responsibility that falls on it with regard to decisions adopted by its judiciary." (Ex. 19 [6/29/14 Ad]). At every turn, Argentina has failed to make any efforts to comply with the Court's orders, and has instead chosen a path of defiance and contempt. Indeed, just last week, counsel for the Republic acknowledged to the Second Circuit during oral argument that the Republic "took steps that were palpably in violation of the injunction" despite having just promised the Supreme Court that it would obey the injunction. (Ex. 47 at 20:5-7 [9/17/14 Tr.]).

   Argentina's status as a foreign sovereign presents no obstacle to the Court finding it in contempt. Nearly every court to have considered the question has held that "the FSIA does not abrogate a court's inherent power to impose contempt sanctions on a foreign sovereign." *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373, 380 (D.C. Cir. 2011); *see also Autotech Techs. LP v. Integral Research & Dev.*, 499 F.3d 737, 744-45 (7th Cir. 2007); *Chabad v. Russian Fed'n*, 915 F. Supp. 2d 148 (D.D.C. 2013); *Export-Import Bank of the Republic of China v. Grenada*, No. 06 Civ. 2469, 2010 WL 5463876, at *2-4 (S.D.N.Y. Dec. 29, 2010). Other courts – including the Second Circuit – have affirmed the imposition of contempt sanctions against foreign sovereigns without so much as suggesting that sovereignty would ever be a bar. *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992); *Servaas Inc. v. Republic of Iraq*, No. 09 Civ. 1862, 2014 WL 279507 (S.D.N.Y. Jan. 24, 2014); *Belize Telecom Ltd. v. Government of Belize*, No. 05 Civ. 20470, 2005 U.S. Dist. LEXIS 18592 (S.D. Fla. Apr. 12, 2005); Indeed, the Court has itself already imposed contempt sanctions on Argentina. *See*

17

*Aurelius Capital Partners, LP v. Republic of Argentina,* No. 07 Civ. 2715, Dkt. No. 200

(S.D.N.Y. May 29, 2009) (finding Argentina in contempt for discovery violations and imposing

adverse inferences).

      Any lingering doubt about the availability of civil contempt sanctions against

foreign sovereigns was dispelled by the Supreme Court's recent decision concerning discovery in

these cases. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014). The

Supreme Court rejected Argentina's contention that the FSIA shielded it from discovery about

assets located overseas. In so holding, the Supreme Court reasoned that because the Federal

Rules of Civil Procedure allowed the discovery sought by Plaintiffs, *id.* at 2254-55, and the FSIA

did not expressly provide otherwise, *id.* at 2256-57, Argentina was not immune from discovery

by virtue of the FSIA. The same analysis applies here: because a party can be held in civil

contempt for violating a court order, and because the FSIA does not expressly provide otherwise

with respect to foreign sovereigns, the Court has the power to hold Argentina in contempt.

      Finally, the particularly egregious nature of Argentina's conduct bears emphasis.

The bar for civil contempt is not high: a single violation is sufficient to sustain a contempt

finding, and "[i]t need not be established that the violation was willful." *Paramedics*

*Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir.

2004). But when a litigant far exceeds these thresholds by repeatedly and brazenly violating

court orders, and when its violations are accompanied by a lack of candor with the judicial

system, courts are especially likely to impose sanctions. *See, e.g., N.A. Sales Co, Inc. v.*

*Chapman Indus. Corp.*, 736 F.2d 854, 857-58 (2d Cir. 1984) (affirming contempt sanction based

on party's "continuous and obviously willful violation" of court orders, when district court had

been "lenient in dealing with [its] earlier contempt," and party "thereupon responded with

callous indifference to its obligations under the order."); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175, 2002 WL 1988200, at *1 (S.D.N.Y. Aug. 27, 2002) (sanctioning party for contempt when it engaged in "blatant violation of [the] Court's injunction" and "lied and submitted fraudulent documents to the Court."); *Constr. Tech., Inc. v. Cybermation, Inc.*, 965 F. Supp. 416, 442 (S.D.N.Y. 1997) (sanctioning party for "knowing, willful, blatant and intentional contempt of [the] Court's order.").

Argentina has blatantly and repeatedly violated the Court's orders, making abundantly clear that it has no respect for those orders, the Court, or the U.S. judicial system. Plaintiffs respectfully request that the Court find Argentina in contempt.

## II.

### SANCTIONS ARE WARRANTED

In light of Argentina's repeated, willful, blatant violations of the Court's orders, civil contempt sanctions also are unquestionably warranted. District courts have broad discretion to fashion civil contempt sanctions to achieve two goals: (1) *coercion – i.e.*, to "secure future compliance with court orders"; and (2) *compensation   – i.e.*, to "compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). Here, such sanctions would achieve the twin goals of coercion and compensation.

As discussed above, Argentina's status as a foreign sovereign is not a bar to the imposition of sanctions. As the Court of Appeals for the District of Columbia Circuit recognized, "the FSIA does not abrogate a court's inherent power to impose contempt sanctions on a foreign sovereign." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 at 380. Indeed, "the question of a court's power to impose sanctions," which the FSIA does not address, is separate "from the question of a court's ability to enforce that judgment," which the

19

FSIA does. *See id.* at 377-78.  The court, moreover, rejected the Democratic Republic of the Congo's argument "that a court should not issue an unenforceable order," as that argument "simply quarrel[led] implicitly with the statutory scheme, and therefore c[ould] be easily dismissed." *Id.* at 379.

As explained above, this conclusion is confirmed by the Supreme Court's recent decision in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014), because the FSIA does not prohibit a court from imposing sanctions—monetary or otherwise—on a foreign sovereign that consistently disregards that court's lawful orders.[4]

### A.    A Fine Is The Appropriate Initial Sanction

Plaintiffs request that the Court impose a daily fine of $50,000 until Argentina ceases to evade and violate the Court's orders.[5]  Where a civil contempt sanction is intended to be coercive, district courts have "broad discretion to design a remedy that will bring about compliance" with the Court's orders. *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 657 (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).  Among the factors courts consider in determining an appropriate monetary sanction are: "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable

---

[4]    While the FSIA does "provide[] that a foreign state's property in the United States is immune from attachment, arrest, and execution except as provided for by the Act" (*NML Capital, Ltd.*, 134 S. Ct. at 2256), the imposition of sanctions does not constitute an "attachment, arrest, [or] execution."

[5]    Plaintiffs recognize that Argentina may refuse to pay any fines imposed by the Court. But the fact that Argentina may engage in additional contumacious conduct should not prevent the imposition of sanctions to address the violations it has already committed.  If Argentina ignores a fine, and continues to violate the Court's orders, the Court can then impose additional sanctions, including non-monetary sanctions that will further incentivize Argentina to comply with the injunctions.

effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989).

Here, all of these factors favor imposition of a *per diem* fine as the initial step to bring Argentina into compliance. There is no question that Argentina's contumacious conduct threatens to inflict an enormous harm: if Argentina succeeds in making payments on the Exchange Bonds without making a Ratable Payment to Plaintiffs, it will have deprived Plaintiffs of their contractual and legal rights. If it succeeds in changing the payment mechanism to exclude from it anyone who will obey the lawful directives of the United States courts, it will have *permanently* frustrated those rights and the decree of the Court. A daily monetary sanction, moreover, is one of the classic forms of sanction designed to compel compliance. *See, e.g., FG Hemisphere*, 637 F.3d at 376 (affirming District Court civil contempt order requiring Democratic Republic of the Congo to either obey court's discovery order or pay a fine of "$5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week."). And Argentina, a large nation with substantial assets, can certainly absorb the proposed daily fine without any dire consequences. *See Chabad v. Russian Fed'n*, 915 F. Supp. 2d 148, 154 (D.D.C. 2013) (awarding civil contempt sanctions against the Russian Federation in the amount of $50,000 per day finding "Russia is one of the world's largest economies"); *Belize Telecom Ltd. v. Gov't of Belize*, No. 05 Civ. 20470, 2005 U.S. Dist. LEXIS 18592, at *25 (S.D. Fla. Apr. 12, 2005) (noting that Belize was "a sovereign government and therefore its financial resources [we]re much larger than the average party," and that a fine of $50,000 per day would "not place a large burden on Defendant"); *see also NML I*, 699 F.3d at 263 (holding that there was no evidence Argentina could not afford to pay Plaintiffs in full).

21

**B.      In Addition To Coercive Sanctions, Plaintiffs Should Receive An
Award Of Attorneys' Fees To Provide At Least Partial Compensation
For The Losses They Suffered Due To Argentina's Repeated
And Willful Noncompliance**

Finally, Plaintiffs request that the Court also impose sanctions that compensate

Plaintiffs for at least a portion of the damages caused by Argentina's contumacious conduct.

Specifically, Plaintiffs ask that the Court award Plaintiffs the attorneys' fees and costs they

incurred in addressing Argentina's repeated violations of the Court's orders (including fees and

costs incurred in connection with this motion), which of course never would have been incurred

had Argentina not violated the Court's orders.  Courts often impose such a sanction.  *See, e.g.*,

*Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (reversing district court decision that declined

to grant party attorneys' fees with respect to appeal of issues concerning adversary's contempt).

Additional monetary sanctions representing the full scope of damages Plaintiffs have suffered

and will suffer by virtue of Argentina's contumacious conduct may be warranted if Argentina

persists in its refusal to abide by the Court's orders.

22

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court hold The

Republic of Argentina in civil contempt, impose the requested sanctions, and grant such other

and further relief as shall be just and proper.

Dated: New York, New York
       September 24, 2014

Robert A. Cohen
(robert.cohen@dechert.com)
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

Edward A. Friedman (efriedman@fklaw.com)
Daniel B. Rapport (drapport@fklaw.com)
Eric J. Finkelstein (efinkelstein@fklaw.com)
Charles E. Enloe (cenloe@fklaw.com)
FRIEDMAN KAPLAN SEILER
    & ADELMAN LLP
7 Times Square
New York, New York 10036-6516
(212) 833-1100

-and-

Lawrence S. Robbins
Mark T. Stancil
(mstancil@robbinsrussell.com)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street N.W., Suite 411
Washington, DC 20006
(202) 775-4520 phone
(202) 775-4510 fax

23

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd., Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., Blue Angel Capital I LLC*

Michael C. Spencer
(MSpencer@milberg.com)
MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300

*Attorneys for Plaintiffs Pablo Alberto Varela, et al.*

Robert D. Carroll
(rcarroll@goodwinprocter.com)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Plaintiff Olifant Fund, Ltd.*

24